# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Harrison Shelby Nelson, Appellant/Respondent,

v.

Melissa Starr Nelson, Respondent/Appellant.

Appellate Case No. 2017-000291

Appeal From Charleston County
Daniel E. Martin, Jr., Family Court Judge

Opinion No. 5678
Heard May 16, 2019 – Filed August 21, 2019

## AFFIRMED

Joseph P. Cerato, of Joseph P. Cerato, P.A., of
Charleston, for Appellant/Respondent.

Alexander Blair Cash, of Rosen Rosen & Hagood, LLC,
of Charleston, for Respondent/Appellant.

**THOMAS, J.:** In this cross-appeal arising from an action for divorce, Harrison
Shelby Nelson (Husband) appeals the family court's final order and final amended
order. Melissa Star Nelson (Wife) appeals the family court's order granting
Husband's motion pursuant to Rule 60(b) of the South Carolina Rules of Civil
Procedure. On appeal, Husband argues the family court erred in (1) finding the
parties' property at 6 Judith Street had no mortgage; (2) valuing the property at 6
Judith Street; (3) finding Husband had a 50% ownership interest in 6 Judith Street;
(4) valuing the parties' property at 109 North Shelmore Boulevard; (5) failing to
equitably divide the parties' debt; (6) including a vehicle owned by Wife's father as

a marital asset and the loan to finance that vehicle as a marital debt; (7) making numerous findings not supported by the record; (8) failing to credit Husband for using the sale of proceeds from an investment property at 18 Reid Street for marital purposes; (9) failing to equitably divide the parties' personal property; and (10) requiring Husband to contribute to Wife's attorney's fees. In her cross-appeal, Wife argues the family court erred in (1) finding excusable neglect existed to grant Husband's Rule 60(b) motion; (2) causing her unfair prejudice by granting Husband's Rule 60(b) motion; and (3) failing to find Husband was estopped from seeking relief under Rule 60(b) due to his own bad conduct. We affirm.

**FACTS/PROCEDURAL HISTORY**

Husband filed this action for divorce in May 2015 after eighteen years of marriage with Wife. The parties reached a settlement agreement regarding the custody and visitation of their two daughters in June 2016, and tried the remaining issues of equitable apportionment and attorney's fees in September 2016.

At the outset of the trial on the financial and property issues, Husband and Wife stipulated each party would retain the ownership interests and liabilities to their respective businesses, as well as the ownership interests in their business property, and agreed the approximate values of those assets were equal for the purposes of equitable apportionment. The remainder of the marital estate consisted predominately of the marital home, numerous real estate investments, tax debts, and personal property. The parties agreed the family court should apportion the total marital estate on an equal 50/50 basis, but disputed the values of certain assets and how the assets and liabilities should be distributed.

**I. Property at 6 Judith Street**

In 2007, Husband and his cousins, Hill Carter Redd and Samuel Cornelius Range Redd (collectively, the Redds), purchased an investment property at 6 Judith Street in Charleston for $920,000. Although only the Redds were listed on the deed to the property, Husband admitted in his financial declarations and at trial he used his commission from the sale of 6 Judith Street, $50,000, to purchase an interest in the property. In his initial financial declaration, Husband claimed he had a 50% interest in the property. However, in his subsequent financial declarations, he claimed he only had a "contingent interest." At trial, Husband claimed he was not sure what this interest was worth and did not know the terms of his agreement with his partners; however, he acknowledged the Redds invested approximately $450,000 in the property.

Wife testified Husband informed her of the $50,000 investment in 6 Judith Street shortly after he made the decision to invest in the property. According to Wife, Husband stated he would have "50 percent ownership in [the] property." Additionally, Wife recalled Husband stated he would receive $800 per month to manage the property.

Husband initially filed a sworn financial declaration indicating there was a $1.1 million mortgage on the property; however, in his subsequent declarations, he listed the mortgage owed as "UNKNOWN." At trial, Husband testified he believed the property was mortgaged, his partners handled the mortgage, and he "had nothing to do with the mortgage." He also testified the $1.1 million mortgage listed in his initial financial declaration was not correct. Husband admitted he failed to produce any documentation of any mortgage on the property despite Wife's attorney's request for these documents. Other than his testimony and his initial claim of a $1.1 million mortgage, Husband did not produce evidence of a mortgage on the property until after trial.

During Husband's cross-examination, Wife introduced the following documents she obtained from the Charleston County Register of Mesne Conveyances's office: a copy of the deed to the property in the name of Husband's partners, a copy of the original mortgage, and a document showing the satisfaction of the original mortgage. Husband objected to the introduction of these documents, arguing there was no foundation for their introduction because he previously testified he had never seen them before. Wife argued Husband testified he had an ownership interest in the property and the property was mortgaged; therefore, she sought to impeach his testimony using public records. Husband stated, "I would withdraw [the objection] if the purpose of their being put in, your [h]onor, is for impeachment of my client's financial declaration, I withdraw the objection." However, when each document was subsequently introduced, Husband stated he had no objection. After Wife introduced these documents, Husband testified he was not aware the mortgage had been satisfied but acknowledged there was currently not a mortgage on the property.

In his first two financial declarations, Husband claimed the property had a value of $1 million. In his third financial declaration, Husband listed the value of the property as "UNKNOWN." At trial, Husband acknowledged he listed the property for sale for $1.2 million, but he did not receive any offers. However, he stated he never listed the property for a lower price. He also admitted the property generated roughly $87,000 of rental income per year. Husband claimed the property was in

poor condition due to lack of maintenance and testified he believed the property was not worth more than the $920,000 he and his partners paid for it. However, he also claimed he spent large sums of money to make repairs and improvements to the property. Wife testified she had "no idea how much money [was] in [6 Judith Street]" but, according to an estimate she found on the internet, she believed the property was worth roughly $1.2 million.

The family court found Husband's testimony regarding 6 Judith Street was not credible because he offered conflicting information in his financial declarations and gave conflicting testimony regarding the value of the property, his ownership interest, and the mortgage. The family court determined the property was worth $1 million and it was not mortgaged. Further, the family court found Husband and his cousins entered into a partnership to purchase and manage 6 Judith Street as a rental property because the evidence presented at trial reflected Husband and his partners agreed they would receive their initial investment and split the remaining profit in half when they sold the property. Accordingly, the family court found the marital value of Husband's investment in the property was $300,000.

## II. Property at 109 North Shelmore Boulevard (Marital Home)

Wife purchased the marital home at 109 North Shelmore Boulevard in the I'On neighborhood of Mount Pleasant in 2004. In his initial financial declaration, Husband claimed the property was worth $900,000; however, in his subsequent declarations, he claimed the property was worth at least $1.13 million. Husband's expert witness, a real estate appraiser, testified he believed the property was worth $1.13 million. However, on cross-examination, Husband's expert acknowledged three of the five properties he used to value 109 North Shelmore sold for prices ranging from $938,000 to $995,000, and the other two properties had significantly more square footage than the marital home. He also admitted that out of the seventy recent sales in the I'On neighborhood, no houses with similar square footage sold for over $1 million. Husband's expert acknowledged he did not use sales of multiple properties similar in size to 109 North Shelmore, including a home within a block of the marital home that sold for $899,000 four months before trial.

In her financial declaration, Wife stated she believed the property was worth $975,000. Wife also presented an expert witness, a realtor, who testified the property had a value of between $925,000 and $955,000. Wife's expert stated the home was "incredibly dated" compared to other homes in the area. Furthermore, Wife's expert testified all of the comparable homes she used sold within four

months of trial and all of them sold for less than $1 million, including two properties with nearly the same square footage as the marital home, which each sold for less than $900,000. However, on cross-examination, Wife's expert admitted that when she initially valued the home at $875,000, she believed the home measured 2,800 square feet and valued the property at $312.50 per square foot. She acknowledged the property's tax records indicated the marital home was actually 3,313 square feet and that at her previous price per square foot, it would have a value of just over $1.03 million.

The family court found that although both experts presented credible testimony, Husband's expert did not rely upon many recent sales of comparable homes on the same street. The family court noted Husband's expert acknowledged most of the comparable home sales were for less than $1 million. Accordingly, the family court found 109 North Shelmore had a value of $975,000.

### III. Teton Ranch, LLC and Tetonas, LLC

In his financial declarations, Husband claimed he had a 25% interest in Teton Ranch, LLC, which owned two properties in Idaho. In his first two financial declarations, Husband claimed a net loss of $38,500 and $53,750, respectively. However, in his final financial declaration and at trial, Husband indicated both of the properties had been foreclosed on, there were no deficiencies, and one of the properties had no 1099 tax liability and any 1099 liability for the other property was unknown. Husband admitted the mortgages on the Teton Ranch, LLC's properties were nonrecourse loans and he had no exposure to any deficiency judgment.

In addition to Teton Ranch, LLC, Husband also claimed he had a 25% interest in Tetonas, LLC, which owned two other properties in Idaho. Husband's initial financial declarations indicated the properties had large negative net values. However, his final financial declaration indicated a negative net value in Tetonas, LLC of approximately $5,000 from the properties. Husband also claimed he owed $13,705 in unpaid capital calls. At trial, Husband acknowledged the mortgages on these properties were nonrecourse debts and he had no personal exposure unless he incurred any 1099 tax liability. He also maintained he owed money for unpaid capital calls but acknowledged he did not provide any documentation regarding previous capital calls, expenses, and rents for Tetonas, LLC. Husband claimed he asked the managing partner of Tetonas, LLC for the documentation but the managing partner refused to give him the information. He later admitted the managing partner was a friend he had known for thirty to forty years but stated

they had a falling out recently due to failed business ventures. Husband also admitted he and the managing partner shared an office and saw each other nearly every day.

The family court found the Teton Ranch, LLC's properties were foreclosed on without any deficiency judgment. The family court noted Husband could be liable for some 1099 tax liability in the future; however, the family court determined Husband failed to present any credible evidence on what that amount would be. Additionally, the family court found Tetonas, LLC had a negative net value of approximately $5,000; however, because the loans were nonrecourse, the value to Husband was effectively zero. The family court also determined Husband's testimony regarding the alleged capital call debt to Tetonas, LLC was not credible because he failed to provide any documentation to support his claim. Accordingly, the family court found the net value of these properties was zero.

## IV. Investment Properties in Costa Rica

Husband and Wife owned a 50% interest in three rental homes in Costa Rica. At trial, Husband stated the property was listed for $350,000 and believed a sale would net $300,000. He testified he owed his mother $50,000 for a loan that was to be paid upon the sale of the Costa Rica property. Husband also claimed he owed his mother interest on this loan, bringing the total amount he claimed was due to his mother to $74,432. In his first two financial declarations, Husband stated he owed his mother $50,000; however, in his final financial declaration, he claimed the amount was $74,432. Husband's mother appeared at trial. Although she did not testify about the loan or the Costa Rica property, she acknowledged she regularly gave Husband substantial monetary gifts of up to $15,000 each year.

Husband claimed he incurred $28,487 in net costs from the Costa Rica property since the filing of the divorce action. However, the records Husband used to support this claim did not include any information on the rental income for the properties. Further, these records showed Husband's partners in the Costa Rica property only contributed $10,000 to cover these costs. Husband claimed he did not have any records of the property's rental income and could not get them because they were in Costa Rica. Husband also submitted bank records showing various transfers to a bank in Costa Rica totaling $21,760 since he filed the divorce action. Husband testified he typically rented out the Costa Rica property three to four times per year at a rate of $3,000 per week.

The family court determined the Costa Rica property was worth $300,000 and Husband and Wife's 50% interest was worth $150,000. The family court also determined Husband's records for the property were not reliable due to the lack of rental income and the disparity between Husband's and his partners' contributions, which the family court found was evidence Husband was sending payments on behalf of all of his partners. Instead, the family court relied on Husband's bank records showing he transferred approximately $22,000 to Costa Rica to maintain the property. The family court also relied on Husband's testimony to determine the parties received approximately $12,000 in rental income to offset the $22,000 in costs, leaving a balance of $10,000, $5,000 of which was Husband's responsibility due to his 50% interest in the property.

The family court also determined Husband owed his mother $50,000 for the loan which was to be paid from the sale proceeds of the Costa Rica property. However, the family court did not find Husband's claim his mother would collect interest in the loan credible and believed that even if she did, she would likely return that money in the form of a gift.

## V. Tax Debts and Other Debts

Although Husband and Wife filed joint tax returns in 2013, they filed separate returns beginning in 2014. Just before trial, Husband produced copies of drafts for his 2014 and 2015 tax returns. According to his draft returns, Husband owed $7,470 in federal taxes for 2014 and $2,710 in penalties and interest for filing late. Husband also owed $1,853 in South Carolina state taxes and $703 in interest and penalties for filing late. Husband's draft 2015 tax returns claimed he owed $42,121 in federal taxes and $11,549 in penalties and interest for filing late. Of the $42,121 in federal taxes owed, he claimed $26,874 were from capital gains due to the sale of properties at 51 and 18 Reid Street. However, Husband's Form 4797 ("Sales of Business Property") from his draft 2015 return was not filled out with all of the necessary information needed to determine his tax liability for the sale of properties at 51 and 18 Reid Street. He also claimed to owe $6,443 in South Carolina state taxes for 2015 and $1,918 in penalties and interest for filing late.

The family court found the late fees and interest Husband incurred were not part of the parties' marital debt because they were incurred due to Husband's failure to file his tax returns and pay taxes in a timely manner. The family court found the remaining amount of Husband's 2014 taxes, $7,470, was marital debt and apportioned to him. The family court's order did not address Husband's 2014 and 2015 South Carolina state taxes.

The family court found the capital gains tax from the sale of the Reid Street properties in 2015 was marital debt. However, the family court took issue with Husband's draft 2015 federal tax return because his Form 4797 was incomplete and did not provide the details necessary to determine the taxable gain solely from the sale of the Reid Street properties. The family court noted Husband did not call his accountant to testify to why this form was incomplete. The family court determined it would not use the $26,874 figure listed in Husband's Schedule D because it was the total tax on all income, including his business income. However, the family court noted line 29 of Husband's Schedule D was helpful for determining the capital gains tax for the Reid Street properties. Relying on the best evidence presented, the family court found the capital gains tax Husband incurred from the sale of these properties was $14,783. The family court then apportioned the 2015 capital gains tax debt to Husband.

Husband also claimed a debt of $23,671 for their children's private school tuition and $4,400 in medical bills were marital debts and should be equitably apportioned. The family court did not address these debts in its final order.

## VI. Wife's Vehicle

Husband and Wife acknowledged Wife owned a 2012 Honda and Wife's father took out a loan in his name to finance the purchase of the vehicle. The family court admitted the loan document into evidence without objection. Wife testified the car and loan were in her father's name due to her low credit score but she had been making the payments. The family court found this vehicle and loan were part of the marital estate and apportioned both to Wife.

## VII. Personal Property

Husband and Wife owned multiple pieces of personal property at issue in this divorce action. At trial, Husband introduced a list of seventy-five items he claimed were in Wife's possession into evidence. He requested the family court equitably divide the marital property and return all items of nonmarital property.

Wife introduced a proposal on how the property should be divided into evidence. She also testified extensively about these items, stating some were already in Husband's possession, some had been lost or destroyed, some were worth far less than Husband believed, and others he was welcome to take. Wife testified the total value of the personal items she wanted to keep was approximately $6,120 and the total value of what Husband would receive or keep was approximately $10,475.

The family court determined Wife's proposed distribution gave more realistic values to the personal property, Wife was more credible, and Wife had a better recollection of what happened to various pieces of personal property. Accordingly, the family court found each party would keep the personal property in their possession, with the exception of eight items that Husband requested.

## VIII. Attorney's Fees

Both Husband and Wife claimed they were entitled to attorney's fees and costs. The family court initially determined whether attorney's fees and costs should be awarded using the factors enumerated in *E.D.M. v. T.A.M.*[1] First, the family court found Husband was able to pay nearly all of his $60,000 in legal fees and costs, but Wife had to borrow money from her father and owed approximately $52,000 in legal fees and costs to her attorney. Second, the family court determined Wife was the prevailing party with regards to many issues in the case, including primary child custody, child support, and equitable apportionment of the marital estate. The family court noted Husband made numerous false claims regarding the values of various assets and liabilities, particularly with regard to his interest in 6 Judith Street. Third, the family court found Wife made roughly $5,835 per month. Husband claimed his monthly income was only $5,000; however, the family court found his income was difficult to determine due to his lack of credibility and inconsistent claims. The family court found Husband's income was much greater than he claimed and determined his minimum average monthly income was approximately $10,000. Accordingly, the family court found Husband had a greater earning capacity than Wife. Fourth, the family court determined Wife would not have the ability to pay her attorney's fees and maintain the marital home. The family court reasoned it would be detrimental to Wife's and the children's standard of living if it required her to pay attorney's fees and possibly have to sell the marital home. Accordingly, the family court found it appropriate to award Wife attorney's fees and costs.

Next, the family court determined the amount of attorney's fees Wife should be awarded using the factors enumerated in *Glasscock v. Glasscock*.[2] After a lengthy analysis of these factors, the family court found Wife was entitled to an award of $35,000 in attorney's fees.

---

[1] 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).
[2] 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

## IX. Posttrial Motions

At the conclusion of the testimony, the family court asked both parties to submit proposed orders in lieu of closing arguments. The family court issued its final order and decree of divorce on November 2, 2016. Husband appealed this order.

Husband filed a motion entitled "Motion to Reconsider (Rule 52(b) and Rule 59)" on November 9, 2016; however, the motion did not contain any grounds for which Husband sought relief. Instead, the motion referenced a memorandum in support of the motion that would be drafted upon the receipt of the trial transcript and filed at a later date. Husband filed and served Wife with a memorandum in support on December 28, 2016, one day before the hearing on the motion. In response to Husband's memorandum of support, Wife argued the family court should not consider the memorandum because she was prejudiced by not having the grounds for Husband's motion within ten days of the final order. Specifically, Wife contended Husband's thirty-six page memorandum she received the day before the hearing was untimely and prejudicial. Furthermore, she argued the motion filed on November 9 failed to meet the requirements of Rule 7(b) of the South Carolina Rules of Civil Procedure because the motion failed to state the grounds for which he sought relief.

The family court agreed with Wife's position that Husband's memorandum was untimely and prejudicial and declined to consider the memorandum in ruling on Husband's motion to reconsider. Thus, the family court dismissed Husband's motion to reconsider because it failed to state with particularity the grounds for his motion to reconsider. Husband did not appeal this order.

In addition, after receiving the family court's final order, Husband discovered the original mortgage on 6 Judith Street had been refinanced and there was still a mortgage on the property. Husband filed a motion entitled "Motion for Relief from Judgment or Order Pursuant to Rule 60(b)" on November 9, 2016, arguing he was entitled to a modification of the final order based upon (1) mistake, inadvertence, surprise, or excusable neglect; and (2) fraud, misrepresentation, or other misconduct of an adverse party. Wife argued there was no evidence of fraud or excusable neglect because Husband had ample opportunity to present evidence of a mortgage on 6 Judith Street throughout the course of litigation yet failed to do so. Accordingly, Wife asserted Husband's failure to present this information did not amount to excusable neglect.

The family court found that although the mortgage information was knowable by Husband and he had a duty to disclose accurate information about the property on his financial declaration, there was excusable neglect on the part of both Husband and Wife for presenting incomplete evidence regarding the existence of a mortgage on 6 Judith Street. Accordingly, the family court granted Husband's 60(b) motion and issued an amended final order including the newly discovered mortgage. After amending the final order and accounting for the refinanced mortgage, the family court found Husband's net equity in the property was only $62,516. Wife appealed this order, and her appeal was consolidated with Husband's.

**STANDARD OF REVIEW**

"In appeals from the family court, [the appellate c]ourt reviews factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Although an appellate court reviews the family court's findings de novo, it is not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651–52 (2011).

> [T]his standard does not abrogate two long-standing principles still recognized by [South Carolina appellate] courts during the de novo review process: (1) a trial [court] is in a superior position to assess witness credibility, and (2) an appellant has the burden of showing the appellate court that the preponderance of the evidence is against the finding of the trial [court].

*Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018). However, when reviewing a family court's evidentiary or procedural rulings, the appellate court reviews using an abuse of discretion standard. *Id.* at 594 n.2, 813 S.E.2d at 486 n.2; *see also Ware v. Ware*, 404 S.C. 1, 10, 743 S.E.2d 817, 822 (2013) ("The decision to deny or grant a motion made pursuant to Rule 60(b), SCRCP[,] is within the sound discretion of the trial [court].").

**LAW/ANALYSIS**

**I. Excusable Neglect and Rule 60(b) Motion**

Wife argues the family court erred in finding excusable neglect on Husband's part and granting his Rule 60(b) motion because Husband acted in bad faith due to his failure to produce the mortgage documents before or at trial. Additionally, Wife argues she was unfairly prejudiced when the family court granted Husband's Rule 60(b) motion because if she knew there were still a mortgage on 6 Judith Street, she would have requested more than a 50/50 division of the marital assets. Furthermore, Wife contends the family court erred by failing to find Husband was estopped by his own bad conduct from seeking relief under Rule 60(b). We disagree.

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . [and] (3) fraud, misrepresentation, or other misconduct of an adverse party . . . ." Rule 60(b), SCRCP. "The movant in a Rule 60(b) motion has the burden of presenting evidence proving the facts essential to entitle him to relief." *Bowers v. Bowers*, 304 S.C. 65, 67, 403 S.E.2d 127, 129 (Ct. App. 1991). "In order to gain relief under Rule 60(b)(1), SCRCP, a party must first show a good faith mistake of fact has been made . . . ." *Williams v. Watkins*, 384 S.C. 319, 324, 681 S.E.2d 914, 917 (Ct. App. 2009). "In determining whether to grant relief under Rule 60(b)(1), the court must consider the following factors: '(1) the promptness with which relief is sought; (2) the reasons for the failure to act promptly; (3) the existence of a meritorious defense; and (4) the prejudice to the other party.'" *Rouvet v. Rouvet*, 388 S.C. 301, 309, 696 S.E.2d 204, 208 (Ct. App. 2010) (quoting *Mictronics, Inc. v. S.C. Dep't of Revenue*, 345 S.C. 506, 510–11, 548 S.E.2d 223, 226 (Ct. App. 2001)).

"An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision." Rule 26(a), SCRFC. "However, when an order from the family court is issued in violation of Rule 26(a), SCRFC, the appellate court 'may remand the matter to the trial court or, whe[n] the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" *Griffith v. Griffith*, 332 S.C. 630, 646–47, 506 S.E.2d 526, 535 (Ct. App. 1998) (quoting *Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991)).

We find the family court did not err in granting Husband's Rule 60(b) motion because there was excusable neglect due to a good faith mistake on Wife's part. *See Williams*, 384 S.C. at 324, 681 S.E.2d at 917 ("In order to gain relief under Rule 60(b)(1), SCRCP, a party must first show a good faith mistake of fact has

been made . . . ."). Initially, we note Husband had numerous opportunities to retrieve the mortgage information, either by contacting to his partners or conducting a record search, and disclose it to Wife and the family court, yet he failed to do so. We also note the family court made numerous findings as to Husband's lack of credibility throughout its final order and amended order, including noting his "outright fabrications and attempt[s] to downplay his actual net worth" in relation to the property. However, Wife introduced an incomplete property records search at trial showing the satisfaction of the original mortgage on the property but not showing the new mortgage that replaced the original mortgage when the property was refinanced. We find Wife's mistake was in good faith because the record contains no evidence this oversight was due to anything other than the new mortgage not appearing in Wife's property records search. Additionally, we agree with the family court that "[t]o find otherwise would result in a windfall to [Wife] to which she may not otherwise be entitled."

Furthermore, we find an analysis of the factors for determining whether to grant a motion made pursuant to Rule 60(b)(1) supports the family court's decision to grant Husband's motion. *See Rouvet*, 388 S.C. at 309, 696 S.E.2d at 208 ("In determining whether to grant relief under Rule 60(b)(1), the court must consider the following factors: '(1) the promptness with which relief is sought; (2) the reasons for the failure to act promptly; (3) the existence of a meritorious defense; and (4) the prejudice to the other party.'" (quoting *Mictronics*, 345 S.C. at 510–11, 548 S.E.2d at 226)). We note the family court did not make specific findings with regards to the *Rouvet* factors in its order granting Husband's Rule 60(b) motion. *See* Rule 26(a), SCRFC ("An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision."). However, we find the record is sufficient to make our own findings in accordance with the preponderance of the evidence. *See Griffith*, 332 S.C. at 646–47, 506 S.E.2d at 535 ("[W]hen an order from the family court is issued in violation of Rule 26(a), SCRFC, the appellate court 'may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" (quoting *Holcombe*, 304 S.C. at 524, 405 S.E.2d at 822)).

We find the first factor, the promptness with which relief is sought, is close; although Husband could have discovered and disclosed the mortgage prior to or at trial by contacting to his partners or conducting a property records search, he timely moved for relief under Rule 60(b) when he discovered the existence of the new mortgage. Next, we find Husband's failure to act promptly by obtaining and disclosing the mortgage information prior to or at trial weighs in Wife's favor.

However, we find the existence of the refinanced mortgage is a meritorious defense favoring Husband. Finally, although Wife would suffer some prejudice due to Husband's failure to produce the mortgage information at an earlier stage of litigation, we find not granting the Rule 60(b) motion would result in a windfall to Wife to which she would not otherwise be entitled; therefore, we find this factor weighs in favor of Husband. As a whole, we find these factors, particularly the existence of a meritorious defense and limited prejudice to Wife, weigh in favor of granting relief.

Additionally, we find Wife's argument that Husband should be estopped from seeking relief due to his own bad faith conduct is not preserved for review. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007) ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." (quoting *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998))). Although Wife raised the issue of estoppel in her return to Husband's Rule 60(b) motion, the family court did not address this argument in its order granting Husband's motion for relief and Wife did not raise it again in a motion to reconsider.

Based on the foregoing, we affirm the family court's order granting Husband's motion for relief under Rule 60(b).[3]

## II. Value of 6 Judith Street

Husband argues the family court erred in setting the value of 6 Judith Street because no competent evidence was presented to support the property having a value of $1 million. We disagree.

"The family court has broad discretion in valuing the marital property." *Pirri v. Pirri*, 369 S.C. 258, 264, 631 S.E.2d 279, 283 (Ct. App. 2006). "A family court may accept the valuation of one party over another, and the court's valuation of

---

[3] Because we affirm the family court's order granting Husband's Rule 60(b) motion, we find this issue of whether the family court erred in finding there was no mortgage on 6 Judith Street in its original final order is moot. *See Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001) ("An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy.").

marital property will be affirmed if it is within the range of evidence presented." *Id.* "[A] property owner is ordinarily competent to offer testimony as to value of his property." *Cooper v. Cooper*, 289 S.C. 377, 379, 346 S.E.2d 326, 327 (Ct. App. 1986). Although an appellate court reviews the family court's findings de novo, it is not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52.

We find 6 Judith Street had a value of $1 million. First, we agree with the family court's finding that Husband's testimony regarding the value of this property was not credible. *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52. Husband gave conflicting testimony at trial, claiming the property was in poor condition and had not been well maintained, while also claiming to have spent large sums of money in order to keep the property in good condition. Additionally, Husband's financial declarations offered conflicting information regarding the value of this property; his initial declarations stated the property was worth $1 million, while his final declaration listed the value of the property as "UNKNOWN." Accordingly, we find Husband's testimony regarding the value of this property was not credible.

Additionally, we find the valuation of $1 million falls within the range of evidence presented. *See Pirri*, 369 S.C. at 264, 631 S.E.2d at 283 ("A family court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented."). Husband testified he believed the property was worth $920,000 and Wife testified she believed the property was worth over $1.2 million. Accordingly, after de novo review, we find 6 Judith Street had a value of $1 million and that value falls within the range of evidence presented at trial.

## III. Husband's Interest in 6 Judith Street

Husband argues the family court erred in finding a 50% partnership interest in 6 Judith Street because it was not in either party's name; the titled owners, the Redds, were not given an opportunity to be heard or made parties; and the ownership of the property was not pled in the pleadings. He claims no credible testimony was given that he and the Redds entered into a partnership.

Wife contends Husband's arguments that the family court erred by failing to include his investment partners are not preserved for review. Additionally, Wife argues the record contains sufficient evidence, including her testimony and

Husband's initial financial declaration, to support the family court's finding that Husband entered into a partnership with the Redds to purchase the property.

First, we find Husband's argument that the family court erred by failing to include his investment partners in the action is not preserved for review. *See First Carolina Corp. of S.C.*, 372 S.C. at 301, 641 S.E.2d at 907 ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." (quoting *Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733). Husband did not object to any of Wife's testimony about the investment arrangement of 6 Judith Street. Although Husband raised the issue in his proposed final order submitted in lieu of closing arguments, the family court did not address this argument in its final order or amended final order. Furthermore, Husband failed to raise the issue in a proper posttrial motion.[4] Accordingly, we find Husband's arguments related to the inclusion of the Redds in the equitable apportionment action are not preserved for our review.

To the extent Husband's argument regarding the ownership of 6 Judith Street is preserved, we disagree with his assertion the record contained no credible evidence to support the family court's finding. Wife testified Husband informed her of the investment in 6 Judith Street and his $50,000 contribution to the purchase of the property with his partners. According to Wife, Husband stated he would have a "50 percent ownership in [the] property." Additionally, Wife recalled Husband stated he would receive $800 per month to manage the property. Husband never objected to this testimony. Husband merely claimed he had some sort of "contingent interest" in the property, but he failed to provide any support or documentation for this claim. Further, the family court found Husband's claim of a "contingent interest" was not credible. *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52 (stating an appellate court reviews the family court's findings de novo, it is not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign

---

[4] Although Husband filed a motion to reconsider pursuant to Rules 52 and 59, SCRCP, the family court dismissed the motion without considering the merits of his claims due to Husband's late filing and service of his memorandum in support. Because this motion was dismissed and the family court did not address his arguments, we find this motion was insufficient to preserve many of his arguments for appeal. *See First Carolina Corp. of S.C.*, 372 S.C. at 301, 641 S.E.2d at 907 ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." (quoting *Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733).

comparative weight to their testimony).  We find the evidence supports the family court's finding regarding Husband's ownership interest in 6 Judith Street.  Accordingly, we affirm the family court's order on this ground.

## IV. Value of 109 North Shelmore Boulevard

Husband argues the family court erred in valuing 109 North Shelmore at $975,000 because Wife's expert improperly calculated the square footage of the home, leading to an undervaluation of the home.  He also contends the family court failed to consider the home was on a larger lot and in a more desirable location than other homes in the community. We disagree.

We find this property had a value of $975,000.  Husband's expert witness testified he believed the property was worth as much as $1.13 million and Wife's expert testified she believed the property was worth approximately $950,000.  We note both parties' experts had flaws in their valuations of the property.  Wife's expert calculated the square footage of the home in her initial valuation to be significantly smaller than the actual square footage.  Although Wife's expert testified the property was worth $950,000, the valuation of the home at her initial price per square foot using the correct square footage would have been over $1.03 million.  However, Husband's expert admitted he did not use numerous other comparable sales in the same neighborhood as 109 North Shelmore, including some sales of less than $1 million.

Despite these issues with both expert witnesses' testimonies, we find the record contains sufficient evidence to support a valuation of less than $1 million.  Wife's expert testified multiple comparable homes sold for less than $1 million, including one home within a block of the property with nearly the same square footage as the marital home that sold for $899,000.  Although Husband argues 109 North Shelmore was in a more desirable location and is on a larger lot than the rest of the properties in the neighborhood, we find the family court's valuation takes these factors into account.  Accordingly, after de novo review, we find 109 North Shelmore had a value of $950,000 and that value falls within the range of evidence presented at trial.  *See Pirri*, 369 S.C. at 264, 631 S.E.2d at 283 ("A family court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented.").

## V. Equitable Division of Debt

Husband argues the family court erred by failing to equitably divide the debt of the parties.  Specifically, Husband contends the family court ignored a negative

balance of roughly $5,000 from his real estate investment in Tetonas, LLC and the outstanding 1099 tax liability for one of the Teton Ranch, LLC's properties. He also asserts the family court ignored evidence of outstanding capital call debt for these investments. Additionally, Husband claims the family court erroneously assigned him all tax debt from 2013, 2014, and 2015 because this tax debt was marital debt and should have been divided equally. He also contends the family court erred in finding the cost to maintain the Costa Rica properties was $5,000 when he presented evidence the cost to maintain the properties was over $28,000. Husband also avers the family court ignored several other debts Husband incurred in his Costa Rica investment. Finally, Husband generally asserts throughout his argument the family court made numerous findings not supported by the evidence.

Initially, Wife contends many of Husband's arguments regarding specific debts are not preserved for review because these debts were not mentioned in the final order and Husband failed to properly raise them in his motion to reconsider. Wife argues the family court did not err by failing to equitably divide the marital debt because the family court noted on multiple occasions Husband's testimony lacked credibility, specifically his claims regarding many marital assets and debts. Wife also argues Husband received the valuable marital assets associated with the debts the family court allocated to him.

"Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution." *Wooten v. Wooten*, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005). "Marital debt should be divided in accord with the same principles used in the division of marital property and must be factored into the totality of equitable apportionment." *Pirayesh v. Pirayesh*, 359 S.C. 284, 300, 596 S.E.2d 505, 514 (Ct. App. 2004). "When a debt is incurred after the commencement of litigation but before the final divorce decree, the family court may equitably apportion it as a marital debt when it is shown the debt was incurred for marital purposes, *i.e.*, for the joint benefit of both parties during the marriage." *Wooten*, 364 S.C. at 547, 615 S.E.2d at 105.

In apportioning the marital estate, the family court "must give weight in such proportion as it finds appropriate" to "liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage." S.C. Code Ann. § 20-3-620(B) (2014); *Wooten*, 364 S.C. at 546, 615 S.E.2d at 105. "[T]he words 'in such proportion as it finds appropriate,' as used in [section 20-3-620], accord much discretion to the [family court] in providing for the payment of marital debts as a

consideration in the equitable division of the marital estate." *Hickum v. Hickum*, 320 S.C. 97, 103, 463 S.E.2d 321, 324 (Ct. App. 1995). "On review, [the appellate] court will look to the fairness of the overall apportionment." *Id.*[5]

Initially, we find some of Husband's arguments are not preserved because they were not ruled upon by the family court in its final order or raised in a proper posttrial motion. *See First Carolina Corp. of S.C.*, 372 S.C. at 301, 641 S.E.2d at 907 ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." (quoting *Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733)). Specifically, we find Husband's arguments relating to debts for tuition for private school, medical bills, and Husband's 2014 and 2015 South Carolina state tax debts are not preserved. However, we find his arguments related to Teton Ranch, LLC; Tetonas, LLC; the Costa Rica property; and his federal tax debts are preserved for review and are addressed below.

### A. Teton Ranch, LLC and Tetonas, LLC

We agree with the family court's finding that Husband had no liabilities from Teton Ranch, LLC. The purchase of both properties held by Teton Ranch, LLC were financed with nonrecourse mortgages, and they were foreclosed on with no deficiency judgments; therefore, Husband had no personal liability for these debts. Although Husband testified he believed he could possibly incur 1099 tax liability due to these foreclosures, he admitted no 1099 tax liability had been assessed and he was unsure what amount could be assessed. Because Husband was not personally liable for these debts due to the nonrecourse nature of the loans and any potential 1099 tax liability was speculative, we find the family court correctly determined Husband's interest in Teton Ranch, LLC had a net value of zero.

We also agree with the family court's finding that Husband had no liabilities from Tetonas, LLC. Like with Teton Ranch, LLC, all of the mortgages on the properties Tetonas, LLC held were nonrecourse, and Husband admitted at trial he would have no personal exposure. Husband also claimed he owed over $13,705 in unpaid capital calls for this property. However, other than images of a few checks indicating payments for some past capital calls, Husband failed to provide any

---

[5] We note that *Hickum*, decided prior to *Stoney*, was decided using an abuse of discretion standard of review. *See Hickum*, 320 S.C. at 97, 463 S.E.2d at 324; *Stoney*, 422 S.C. at 595, 813 S.E.2d at 487. In light of our supreme court's direction in *Stoney*, we review the fairness of the overall apportionment de novo.

documentation of capital calls, expenses, and rental income for Tetonas, LLC. Although Husband claimed this was because the managing partner refused to give him the documents, he later admitted the managing partner was a longtime friend he shared an office with and saw nearly every day. We agree with the family court's finding that Husband's claims regarding this alleged capital call debt and his inability to retrieve the documents supporting these claims were not credible. *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52 (stating an appellate court reviews the family court's findings de novo, it is not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony). Because Husband was not personally liable for these debts due to the nonrecourse nature of the loans and he failed to produce any credible documentation for his alleged capital call debt, we find the family court correctly determined Husband's interest in Tetonas, LLC had a net value of zero.

## B. Costa Rica Property

We agree with the family court's finding that Husband incurred a loss of $5,000 for maintaining the Costa Rica property after the divorce action was filed. Specifically, we agree with the family court's finding that Husband's records for this property were not reliable. *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52. These records lack any indication of rental income from this property and show a large disparity between Husband's contributions of over $28,000 to maintain the property compared to his equal partners' contributions of approximately $10,000. We find this disparity supports the family court's finding that Husband appeared to be sending many of the payments to maintain this property on behalf of all of the partners. Accordingly, we find relying on Husband's bank account transfers was the most reliable way to determine Husband's cost in maintaining the property in this case. We further find Husband's testimony regarding the rental history and rate supports the family court's finding that Husband received approximately $12,000 of rental income to offset his approximately $22,000 in costs. Thus, $10,000 in costs remained to be split evenly between the partners, meaning Husband was responsible for $5,000. Accordingly, we affirm the family court's finding as to these costs.

We also agree with the family court's finding that Husband would not have to pay interest to his mother on the $50,000 she loaned him. Husband produced a loan document, which listed the interest rates and total due as of June 2016. However, given Husband's mother's testimony that she regularly provided him with substantial monetary gifts each year and the family court's findings regarding

Husband's credibility on this interest amount and throughout the case, we agree with the family court there was a strong likelihood Husband's mother will either not require him to pay this interest or return it to him as a gift shortly after he pays it. *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52. Accordingly, we affirm the family court's finding that the amount Husband owed on this loan was $50,000.

### C. Tax Debts

We agree with the family court's valuation and apportionment of Husband's 2014 and 2015 federal tax debts. Initially, we agree that Husband's tax penalties and interest for 2014 and 2015 are not marital debt. *See Wooten*, 364 S.C. at 547, 615 S.E.2d at 105 ("When a debt is incurred after the commencement of litigation but before the final divorce decree, the family court may equitably apportion it as a marital debt when it is shown the debt was incurred for marital purposes, *i.e.,* for the joint benefit of both parties during the marriage."). We find Husband's penalties and late fees were incurred due to his own negligence in not filing his tax returns on time and was not done for the joint benefit of the parties.

Next, we agree with the family court's finding that Husband's 2015 capital gains tax debt was $14,783. We find Husband's claim the family court should have valued his 2015 capital gains tax at $53,670 is without merit. First, that figure included Husband's penalties and interest for 2015. Second, the remaining $42,121 in federal taxes was Husband's total federal tax liability for 2015, not just his capital gains. We agree with the family court's assessment that Husband's Schedule D was not reliable because it was mostly incomplete and did not contain any information about the Reid Street properties. However, his Schedule D worksheet provided some direction. The total taxable income indicated on this worksheet was listed as $26,874; however, this figure included all of Husband's capital gains and qualified dividends, including income from his business. We find the best evidence in the record indicating Husband's capital gains from 2015 was the figure of $14,783 on line 29 of Husband's Schedule D worksheet. Accordingly, we affirm the family court's findings regarding the 2014 and 2015 tax debts and their equitable apportionment.

### D. Summary of Debts

Based on the foregoing, we find the family court's valuing and equitable apportionment of the debts as a whole was accurate and fair given the credible evidence presented at trial. *Hickum*, 320 S.C. at 103, 463 S.E.2d at 324 ("[T]he words 'in such proportion as it finds appropriate,' as used in [section 20-3-620], accord much discretion to the [family court] in providing for the payment of

marital debts as a consideration in the equitable division of the marital estate."); *id.* ("On review, [the appellate] court will look to the fairness of the overall apportionment.").[6] Accordingly, we affirm the family court's apportionment of the parties' debts.

## VI. Vehicle in Wife's Father's Name

Husband argues the family court erred in finding a vehicle titled in Wife's father's name was a marital asset and the loan taken out to finance the vehicle was a marital debt. We find this issue is not preserved for appellate review. *See First Carolina Corp. of S.C.*, 372 S.C. at 301, 641 S.E.2d at 907 ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." (quoting *Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733)). Husband failed to object to any testimony regarding the vehicle or evidence of the loan at trial, did not mention the vehicle at all in his proposed final order, and did not raise this issue in a proper posttrial motion. Accordingly, we find this issue is unpreserved.

## VII. Proceeds from Sale of 18 Reid Street

Husband argues the family court erred by failing to credit him for using the sale of the proceeds from 18 Reid Street for marital purposes. Husband claims he used $23,000.88 in proceeds from 18 Reid Street to pay for various marital debts. We find Husband's argument is not preserved for review. *See id.* ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." (quoting *Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733)). Husband addressed this issue in his proposed final order submitted in lieu of closing arguments; however, the family court only addressed the issue regarding 18 Reid Street by stating, "The Husband received $50,000 from the sale of 18 Reid Street, and has had the sole use of those funds during the pendency of the case." We find this insufficient to preserve this issue for appeal. Further, Husband failed to raise this issue in a proper posttrial motion. Accordingly, we find this issue is not preserved for review.

## VIII. Equitable Division of Personal Property

Husband argues the family court erred by failing to equitably divide the parties' personal property because he only received eight of the seventy-five items set forth in the marital property list.

---

[6] *See supra* note 5.

We agree with the family court's determination that Wife's proposed distribution gave more realistic values to the personal property, Wife was more credible, and Wife had a better recollection of what happened to various pieces of personal property. *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 651–52 (stating an appellate court reviews the family court's findings de novo, it is not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony). Although Husband received significantly fewer items than Wife, he received a distribution with a greater value. Specifically, Wife testified the items she received under her proposal, which the family court adopted, were worth approximately $6,120, while the items Husband received were worth $10,475. We find this distribution is equitable. Accordingly, we affirm the family court's distribution of personal property.

## IX. Attorney's Fees

Husband argues the family court erred in awarding Wife $35,000 in attorney's fees because he was the prevailing party in many of the child custody issues that the parties settled, neither party had an excess of income, and both parties received beneficial results. We disagree.

"[A]ttorney's fees may be assessed against a party in an action brought in the family court." *Patel v. Patel*, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). "In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) [the] beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the] effect of the attorney's fee on each party's standard of living." *E.D.M.*, 307 S.C. at 476–77, 415 S.E.2d at 816. The reasonableness of attorney's fees should be determined by the following factors: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; (6) customary legal fees for similar services." *Glasscock*, 304 S.C. at 161, 403 S.E.2d at 315. "[O]n appeal, an award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor." *Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997).

Initially, we disagree with Husband's argument that both parties received beneficial results. Although Husband did receive significant time with the children pursuant to the parties' child custody settlement and the agreement included a provision he

had sought preventing Wife from moving the children from the Charleston area, Wife received primary custody of both children.  The agreement also contained a provision stating the parties' oldest daughter was not required to visit Husband due to their strained relationship.  In addition, Wife received the marital home in the apportionment of marital assets.  Finally, as discussed above, we find Wife prevailed as to the valuation of many of the marital assets, specifically 6 Judith Street and 109 North Shelmore.

Although Husband claims neither party had an excess of income, we find this fact, even if true, does not alter the analysis of the *E.D.M.* factors.  According to the parties' fee affidavits, Husband had been able to pay most of his attorney's fees, while Wife had a large outstanding balance.  Additionally, we find Husband had a significantly higher income than Wife.  Wife made roughly $5,835 per month.  Husband claimed his monthly income was only $5,000; however, as the family court found, his income was difficult to determine due to his lack of credibility and inconsistent claims.  We agree with the family court that Husband's income was much greater than he claimed and find the family court's determination his minimum average monthly income was approximately $10,000 was reasonable.  Based on this income disparity, we find Husband was in a significantly better financial position than Wife.  Further, we agree with the family court that requiring Wife to pay her attorney's fees would have a far greater impact on her standard of living than it would have on Husband's if he was required to pay Wife's attorney's fees.  Accordingly, we find the analysis of the *E.D.M.* supports an award of attorney's fees to Wife.

Husband does not contest any of the *Glasscock* factors in his brief, other than the beneficial result obtained, which we addressed above.  Further, we agree with the family court's findings as to these factors and find the record contains sufficient evidence to support these remaining factors.  Accordingly, we affirm the family court's award of $35,000 in attorney's fees to Wife.

**CONCLUSION**

Based on the foregoing, the family court's order granting Husband's Rule 60(b) motion and the amended final order are

**AFFIRMED.**

**HUFF and KONDUROS, JJ., concur.**